UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIUS & MELISSA CERDES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-2866** |
| **UNITED STATES OF AMERICA** | **SECTION L (4)** |

### ORDER & REASONS

Before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendant, the Government. Plaintiffs Julius and Melissa Cerdes oppose the motion. R. Doc. 18. The Government replied. R. Doc. 19. Considering the record, the briefing, and the applicable law, the Court now rules as follows.

I.   BACKGROUND

This case arises out of alleged misconduct by corrupt former DEA agent Chad Scott ("Scott"). R. Doc. 1 at 1. Plaintiff Julius Cerdes ("Cerdes") avers that Scott and his associate, Heath Martin, framed Cerdes for crimes he did not commit. *Id.* Scott then orchestrated the prosecution of Cerdes on false federal charges and eventually coerced Cerdes into pleading guilty to those charges in Case 06-115. *Id.* The Fifth Circuit has now vacated Cerdes's guilty plea, and the Government has voluntarily dismissed the Indictment against him. *Id.* at 11. Scott, who was convicted of crimes arising from official misconduct in 2021, is currently serving a 13-year sentence in federal prison. *Id.* at 10. Cerdes now brings a suit against the United States under the Federal Tort Claims Act, alleging that Scott maliciously prosecuted him in Case 06-115. *Id.* at 12.

The incidents underlying this case began nearly twenty years ago. *Id.* at 2. Cerdes alleges that on November 14, 2005, he took his boat out for a shrimping trip with his deckhand "Bud" Tilley. *Id.* That evening, Cerdes and Tilley returned to Cerdes's house in Ponchatoula, Louisiana where they discovered that a Drug Enforcement Administration ("DEA") taskforce had "taken

1

over Cerdes's house and was conducting a search of it." *Id.* at 3. He avers that Scott, as well as "several now-disgraced members of Scott's DEA taskforce" were on the scene. *Id.*

Cerdes alleges that Scott had significant "personal animosity" towards him. *Id.* Cerdes avers that he "had known Scott from the Ponchatoula, Louisiana area since before Scott was a DEA agent or even a police officer, going back to when Scott was a bartender at local clubs. Scott had always disliked Cerdes to the point of active animosity, probably based on interactions they had while Scott was a bartender and Scott's personal relationship with Cerdes' ex-wife." *Id.* at 3. Cerdes alleges that "because of his personal animosity towards Cerdes, and because he wanted to try to coerce Cerdes into making incriminating statements about other people Scott was targeting in Tangipahoa Parish, Scott had decided to orchestrate a campaign to maliciously prosecute Cerdes for crimes he did not commit." *Id.* at 4.

Other officers on the scene included Karl Newman and Heath Martin, both Tangipahoa Parish Sheriff Deputies assigned to Scott's DEA taskforce. *Id.* at 3-4. Cerdes alleges that the taskforce already had his wife, Melissa Cerdes, in custody as well as an individual named Raymond Quintanilla and his wife. *Id.* at 3. Quintanilla was an acquaintance of Cerdes, from whom Cerdes had purchased marijuana for personal consumption in the past. *Id.* Cerdes alleges that he had never conspired with Quintanilla to distribute marijuana nor possessed marijuana with intent to distribute it. *Id.*

When Cerdes and Tilley arrived on the scene, they were placed under arrest. *Id.* at 4. Cerdes told agents that he had a firearm located in his back pocket, which he regularly carried on shrimping trips. *Id.* Members of the task force seized the firearm. *Id.* A drug dog then searched Cerdes's vehicle but found no drugs. *Id.* At that point, Tilley, who had been separated from Cerdes, began talking with Deputy Martin, with whom he was friends. Martin offered Tilley, "if there is anything I can do to help you, just let me know." *Id.* Tilley replied that there was a bag of marijuana

2

in his boot, and he would "surely appreciate" if Martin could "get rid of that." *Id.* At that point, Martin brought the marijuana to Scott. *Id.*

Cerdes alleges that Scott "knew the law" regarding 18 U.S.C. § 924(c), possession of a firearm in furtherance of drug trafficking, which carries a mandatory minimum five-year sentence. *Id.* at 5. "Presented with the opportunity," he decided to frame Cerdes for this crime. *Id.* Scott thus "took the marijuana that had been in Tilley's boot and planted it under the driver's seat of Cerdes's truck. *Id.* Cerdes alleges that Scott and Martin then "pretended to search" the truck and to find the planted bag of marijuana. *Id.* Scott then told Cerdes, "Now I have you with the gun protecting the drugs and you will do more time than the Mexican in your shop with the dope." *Id.* At the conclusion of the raid, he arrested Cerdes on false state charges of possession with intent to distribute marijuana. *Id.*

Thereafter, Cerdes alleges that "Scott lied, manipulated, and worked behind the scenes to rig the scales against Cerdes at every stage of the ensuing criminal proceedings, starting with state court." *Id.* First, Scott seized Cerdes's assets, such as three boats and $74,000, and initiated forfeiture proceedings despite knowing the assets were not connected to a crime. *Id.* He caused Cerdes's bond to be set at one million dollars to give himself leverage, and eventually agreed to get the bond lowered if Cerdes agreed to "debrief" with him. *Id.* at 6. He also got in contact with Cerdes's criminal defense lawyers who, unknown to Cerdes, were associates of Scott, and got them to disclose confidential information. *Id.*

Cerdes eventually agreed to meet with Scott at the Tangipahoa Sheriff's office, without his attorneys present, so that Cerdes could "winterize" his boats to prevent storage damage. *Id.* at 7. During the meeting, Scott explained that he wanted Cerdes to "cooperate with him" to frame other people. *Id.* Scott had "two targets in mind," small time cocaine users with whom Cerdes was acquainted. *Id.* Scott wanted Cerdes to lie and say he sold cocaine to one of the individuals, and to

3

lie and admit that he was involved with Quintanilla and a scheme to sell marijuana. *Id.* Scott threatened Cerdes with filing the federal § 924(c) charge against him and "dangled the possibility that he would not proceed with forfeiting the boats if Cerdes would tell Scott what he wanted to hear." *Id.* Cerdes "reluctantly agreed to Scott's demands because he feared the possibility of federal charges with a mandatory minimum five-year sentence." *Id.*

Cerdes then met with Scott and his attorneys and "stuck with the script Scott had fed him," saying that he had been involved in distributing marijuana and cocaine. *Id.* Regardless, however, Scott moved forward to forfeit Cerdes's boats. *Id.* Feeling angry and tricked, Cerdes objected to the forfeiture and indicated that he would fight the false criminal charges. *Id.* at 8. At that point, Scott arranged for Cerdes to be charged with the false marijuana and cocaine charges in state court. *Id.* Scott and Martin then went to the jail where Cerdes was being held. *Id.* Scott "gloated about how he had caused Cerdes to be arrested on another trumped-up charge" and again demanded that Cerdes cooperate with him or face a false § 924(c) charge. *Id.* Scott threatened, "who do you think they are going to believe, me or you?" *Id.* Cerdes, however, "told Scott and Martin he was rejecting their demands." *Id.*

Once Cerdes made bail, he filed a formal complaint with the DEA about Scott's behavior. *Id.* Shortly thereafter, "Scott carried through with his threat of having Cerdes falsely charged in federal court." *Id.* On April 13, 2006, a three-count indictment was filed in Eastern District of Louisiana Case 06-115, charging Cerdes with a marijuana conspiracy, possession of marijuana with intent to distribute, and a § 924(c) charge ("Case 06-115"). *Id.* Cerdes alleges that "Scott procured this indictment despite his knowledge that he had framed Cerdes and that the charges were malicious and lacked probable cause." *Id.* at 9.

Cerdes was ordered detained. *Id.* While Cerdes was being held, Scott caused him to be transferred to a different dorm that also housed Calvin Jenkins, who was "acting as an informant

4

for Scott." *Id.* When Cerdes was eventually released on bond, the Government moved to revoke him less than a week later, alleging that "while Cerdes had been housed in the dorm with Jenkins, Cerdes had offered Jenkins $20,000 to kill Scott." *Id.* Cerdes maintains that "this allegation was a complete fabrication on the part of Scott and Jenkins. But Scott's ploy worked, and Cerdes was again ordered detained." *Id.*

Cerdes avers that "[b]eaten down by Scott's power to lie, cheat, and manipulate the criminal justice system with impunity, and fearing conviction on a § 924(c) charge with a mandatory five-year sentence, [he] ultimately agreed to a plea agreement requiring him to plead guilty to the marijuana conspiracy in exchange for dismissal of the § 924(c) charge and the possession-with-intent charge." *Id.* at 10. He was ultimately sentenced to 18 months' imprisonment. *Id.* He also alleges that "[a]s part of the plea agreement, the U.S. government took the highly unusual step of requiring Cerdes to withdraw his complaint to the DEA about Scott." *Id.* Cerdes was also required to consent to forfeiture of the boats and money Scott had seized. *Id.*

As a result of this alleged wrongful conviction, Cerdes indeed served the 18-month sentence as well as two years of supervised release. *Id.* He also became a "prohibited person" unable to possess firearms within the meaning of 18 U.S.C § 922. *Id.* Several years thereafter, Cerdes was charged with possession of ammunition by a prohibited person on the basis of this prior conviction. *Id.* He ultimately plead guilty to that charge and was sentenced to probation. *Id.*

Cerdes alleges that many years later, in early 2016, one of Scott's subordinates on the Tangipahoa Parish Drug Taskforce was arrested by the Louisiana State Police for a variety of drug crimes. *Id.* He avers that "the resulting investigation led to an exhaustive federal investigation of Scott's activities over the years he had been a DEA agent." *Id.* Eventually, Scott was charged with and convicted of a variety of federal crimes. *Id.* He was sentenced to 160 months' imprisonment for his misconduct. *Id.*

Cerdes alleges that during this investigation, the Government discovered Cerdes's complaint to the DEA about Scott. *Id.* Cerdes avers that "the federal government performed a thorough investigation of Cerdes's allegations, and on information and belief came to believe he was telling the truth about how Scott had framed him and forced him to plead guilty to crimes he did not commit." *Id.* at 11. The Government therefore asked Cerdes to be a witness during Scott's sentencing as to the federal charges. *Id.* Cerdes avers that the Government "sponsored Cerdes's testimony during that hearing, in which he testified that he was in fact innocent of the charges from [Case 06-115] and that Scott had framed him, planted evidence, and forced him to plead." *Id.*

In the meantime, Cerdes filed a "petition for a writ of coram nobis" in Case 06-115, "contending that his conviction should be vacated because of Scott's misconduct." *Id.* Although the district court initially denied the petition as untimely, the Fifth Circuit reversed that decision, holding that Cerdes's delay in filing the *coram nobis* petition was reasonable based on the continuing threat Scott posed by virtue of his role as a government agent. *Id.* The Circuit found that the threat remained until Scott was criminally charged, after which Cerdes timely filed. *Id.*

On remand, the government withdrew its opposition to Cerdes's *coram nobis* petition, and the district court thus vacated Cerdes's conviction. *Id.* Citing "the interest of justice," the Government then moved to dismiss the Indictment against Cerdes. *Id.* Accordingly, the district court dismissed the indictment as to Case 06-115 on January 31, 2024. *Id.*

Cerdes brings a claim for "malicious prosecution" against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq. Id.* at 12. He avers that he suffered wrongful conviction and incarceration, "with all the mental, emotional, financial, and reputational harms that such a malicious prosecution and wrongful conviction and imprisonment engender." *Id.* at 11-12. Cerdes also seeks damages for the "adverse collateral consequences of a felony conviction, including the loss of his Second Amendment rights." *Id.* at 12. He also seeks "financial

6

damages through the unlawful seizure of his property, namely, the boats and money wrongfully forfeited as part of the criminal proceedings." *Id.* Melissa Cerdes also brings a claim in her own right for "the loss of her husband's love, companionship, affection, and financial support during his period of incarceration, as well as the extreme mental anguish and distress caused by watching a loved one be maliciously prosecuted by a federal agent on false and baseless charges." *Id.*

Plaintiffs also bring a separate suit against Heath Martin and his employer, the City of Hammond. Case 25-142, R. Doc. 4. Cerdes avers that Martin "helped Scott in the[] unlawful endeavors" outlined above. *Id.* at 1. Namely, Cerdes argues that on the night the DEA task force raised his house, Martin assisted Scott in planting the marijuana in Cerdes truck and pretending that it was found there. *Id.* at 5. He also alleges that Martin was present when Scott visited Cerdes in jail to threaten him with the false § 924(c) charge. *Id.* at 8. Cerdes brings § 1983 claims for violation of due process in violation of the Fourteenth Amendment and unreasonable seizure in violation of the Fourth Amendment based on Martin's planting evidence and conspiring with Scott to frame Cerdes. *Id.* at 13-14. He also brings a state-law malicious prosecution claim against Martin and the City of Hammond under a *respondeat superior* theory. *Id.* at 15.

## II.   PRESENT MOTION

The Government moves to dismiss Plaintiffs' suit for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] R. Doc. 13. As to Cerdes' claim for malicious prosecution, the Government argues that the suit fails to adequately allege three elements of the tort: (1) the "bona fide termination" of a prior criminal proceeding "in favor" of Cerdes (2) the absence of "probable cause" for the proceedings against Cerdes and (3) that Scott acted with "malice." R. Doc. 13-1 at 10-19. Further, the Government argues that Melissa Cerdes' claim for

---

[1] Consolidated Defendants Heath Martin and the City of Hammond do not join in the motion.

loss of consortium is not cognizable because the FTCA does not recognize "bystander damages." *Id.* at 25. Next, the Government argues that to the extent that Cerdes brings malicious prosecution claims arising from the *state* marijuana and cocaine charges mentioned in the Complaint, these claims fail to meet several elements of a malicious prosecution claim. *Id.* at 19-21. It avers that to the extent that Cerdes brings claims other than malicious prosecution, such as false arrest, such claims are time-barred. *Id.* at 22-24. Finally, the Government also contends that "conspiracy to commit" malicious prosecution is not a separate tort, and that, moreover, Plaintiffs fail to allege "any specific agreement" which caused their injuries. *Id.* at 21-22.

Plaintiffs oppose the motion. R. Doc. 18. First, as to the Government's argument that Cerdes fails to bring a viable malicious prosecution claim, Plaintiffs contend that the Government's arguments improperly go to the merits of the suit rather than the inadequacy of the pleadings. *Id.* at 10-12. Moreover, Plaintiffs argue that the Government improperly relies on disputed documents outside of the pleadings, such as Factual Bases signed by Cerdes and Quintanilla in Case 06-115. *Id.* at 3. Overall, Plaintiffs argue they have more than adequately plead all elements of Cerdes's malicious prosecution claim. *Id.* at 12-27. Further, they argue that Melissa Cerdes is, indeed, able to recover damages for loss of consortium under the FTCA. *Id.* at 29. As to the Government's other arguments, Plaintiffs largely agree with the Government and clarify that (1) Cerdes is not bringing independent malicious prosecution claims arising from any state charges, (2) Cerdes is not bringing a separate false arrest claim, and (3) "conspiracy to commit malicious prosecution" is not a separate claim from malicious prosecution itself. *Id.* at 27-28.

The Government replied. R. Doc. 19. It reiterates its arguments as to dismissal of Cerdes's malicious prosecution claim. *Id.* at 2-9. Despite Cerdes's representation that he is not bringing separate claims based on the state proceedings, false arrest, or conspiracy, the Government seeks "dismissal to the extent the Complaint can be construed to allege" the claims. *Id.* at 10.

8

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. A court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

### IV. DISCUSSION

The parties dispute (1) whether Cerdes has adequately alleged a malicious prosecution claim and (2) whether Melissa Cerdes has an independent claim for loss of consortium based on such malicious prosecution. All other issues raised in the Government's motion are largely moot. The Court first addresses the evidence and documents properly considered in deciding the instant motion. The Court than takes each issue in turn.

#### A. Most of the Documents Cited by the Government Are Not Properly Considered on the Instant Motion to Dismiss.

Generally, a court may not look beyond the plaintiff's complaint when deciding whether to grant a 12(b)(6) motion. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003);

9

*Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). There is, however, an exception to the standard rule. The Fifth Circuit in *Collins v. Morgan Stanley Dean Witter* held that a district court may rely on evidence outside the complaint without converting the Rule 12(b)(6) motion into a summary judgment motion when the evidence is: (1) attached to the motion, (2) referred to in the complaint, and (3) central to the plaintiff's claim or is subject to judicial notice. 224 F.3d 496, 498-99 (5th Cir. 2000); *George v. SI Gr., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). "The court has 'complete discretion' to either accept or exclude the evidence for purposes of the motion to dismiss." *Knight v. Am. Bankers Ins. Co. of Fla.*, No. 23-4834, 2024 WL 3742689, at *2 (E.D. La. Aug. 7, 2024) (citing *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988)).

Here, in support of its assertion that Cerdes fails to state a viable malicious prosecution claim, the Government repeatedly cites record documents from other cases. For example, the Government cites the Indictment and the Factual Bases as to Cerdes and co-defendant Quintanilla in Case 06-115. *See* R. Doc. 13-1 at 13, 14. The Government argues that Cerdes does not actively "dispute" portions of these Factual Bases, meaning that the Court can take those portions as true. *Id.* at 15. The Government also cites the transcript of Scott's sentencing hearing for the proposition that it maintained that Cerdes was guilty of at least *some* crime even while it called him as a witness at Scott's trial. *Id.* at 12. Finally, the Government references portions of Cerdes's petition for a writ of coram nobis, the Fifth Circuit's decision on that petition, and the Government's motions to withdraw its objections to the petition and to dismiss the indictment against Cerdes. *Id.* at 8, 10.

The Court refuses to consider the Indictment, Factual Bases from Case 06-115, and the transcript of Scott's sentencing hearing on the instant 12(b)(6) motion. The Court has carefully searched Plaintiffs' Complaint, R. Doc. 1, and finds no mention of these particular documents. Although Plaintiff refers generally to the alleged wrongful indictment and coerced pleas, as well as to the fact that the Government called him as a witness at Scott's sentencing hearing, he does

not mention the documents themselves. Accordingly, the documents are not "referred to in the complaint" as is usually required for consideration on a 12(b)(6) motion. *Collins*, 224 F.3d at 489.

The Government argues that the Court could simply "take judicial notice" of the documents because they are "publicly available." R. Doc. 19 at 1. However, the Court declines to do so given that the reliability of many of these documents is a major issue in the case. *See* R. Doc. 18 at 3 (Plaintiffs argue that the Government's "reliance" on his Factual Basis from Case 06-115 is "somewhat ironic given that this whole case is about how Mr. Cerdes was framed and unlawfully coerced into signing that document by the government's own agent and employee, Chad Scott."). Accordingly, the Court finds that examining such documents, accepting their contents as true, and construing them to refute Plaintiffs' well-plead allegations on the instant 12(b)(6) motion would be highly inappropriate. Rather, the Court merely analyzes whether the allegations Plaintiffs make in the Complaint, taken as true, are sufficient to sustain their claims. *Iqbal*, 556 U.S. at 678.

The Court will, however, consider Cerdes's petition for a writ of coram nobis, the Fifth Circuit's decision on that petition, and the Government's motions to withdraw its objections to the petition and to dismiss the indictment against Cerdes. These documents are all referred to in the complaint. *See* R. Doc. 1 at 11. They are also central to Plaintiffs' claim, as the vacatur of Cerdes's conviction in Case 06-115 underlies the instant suit for malicious prosecution as to that case. Finally, no party challenges these documents as coerced or otherwise unreliable. Accordingly, they are properly considered. With this in mind, the Court moves on to determine the merits of the Government's motion to dismiss.

### B. Plaintiffs Have Adequately Alleged Malicious Prosecution as to Cerdes.

Cerdes brings his malicious prosecution claim against the Government pursuant to the FTCA. "The FTCA is a limited waiver of the federal government's immunity from tort lawsuits, allowing plaintiffs to sue the federal government 'for money damages . . . [for] personal injury or

death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Coleman v. United States*, 912 F.3d 824, 829 (5th Cir. 2019) (quoting 28 U.S.C. § 1346(b)(1)). "All FTCA liability is *respondeat superior* liability." *Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995).

"A claim for malicious prosecution under the FTCA is dependent on the substantive law of the state where the claim arose." *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 489 (5th Cir. 2016). Under Louisiana law, "the elements of the tort of malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So. 3d 362, 367. Here, the Government contends that Cerdes fails to adequately allege the third, fourth, and fifth elements. R. Doc. 13-1 at 9-19. The Court addresses its arguments as to each.

### i. Bona Fide Termination in Favor of the Present Plaintiff

The parties dispute whether Plaintiffs adequately allege that Case 06-115 ended in a "bona fide termination in favor" of Cerdes. To meet this element, Louisiana courts "have looked for dispositions that tend to show that the court passed on the merits of the charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff." *Lemoine*, 168 So. 3d at 368. More specifically, "a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi, unless* the abandonment is for reasons not indicative of the innocence of the accused, such as when the *nolle prosequi* is the result of an agreement or compromise with the accused." *Id.* at 370. Examples of circumstances not "indicative of innocence" include "misconduct on the part of the

accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* (internal citations omitted). Overall, "the ultimate consideration in any case in which criminal charges have been dismissed by the district attorney . . . is whether the circumstances surrounding the dismissal of the criminal proceeding support an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution." *Id.* at 372.

The Government argues that Plaintiffs fail to allege a "bona fide termination" of Case 06-115 suggestive of Cerdes's innocence. This argument fails. In the Complaint, Plaintiffs allege that Cerdes "filed a petition for a writ of coram nobis in [Case 06-115], contending that his conviction should be vacated because of Scott's misconduct." R. Doc. 1 at 11. "[T]he writ of coram nobis is an extraordinary remedy to correct errors of the most fundamental character" and is available "only to correct errors resulting in a complete miscarriage of justice." *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004). Here, Plaintiff alleges that:

> Although the District Court initially denied the petition as untimely, the Fifth Circuit Court of Appeals reversed that decision, holding that Cerdes's delay in filing the coram nobis petition was reasonable based on the continuing threat Scott posed by virtue of his employment as a government agent. That threat remained until Scott was criminally charged, after which Cerdes timely filed his coram nobis.
>
> On remand, the government withdrew its opposition to Cerdes's coram nobis petition, which the District Court granted on January 22, 2024. Cerdes's conviction was vacated on that date. Citing "the interest of justice," the government then moved to dismiss the indictment against Cerdes. The District Court granted that motion and dismissed the indictment in Eastern District of Louisiana case number 06-cr-115 on January 31, 2024.

R. Doc. 1 at 11. The Court finds that these allegations are more than sufficient to allege that the Indictment against Cerdes in Case 06-115 was dismissed in circumstances "indicative of the innocence of the accused." *Lemoine*, 168 So. 3d at 368. That is, Cerdes alleges that the Government

13

did not object to his request for relief which is only available to correct a "complete miscarriage of justice." *Esogbue*, 357 F.3d at 534. Moreover, Cerdes also alleges that the Government asked him "to be a witness on its behalf during Scott's sentencing hearing" and "sponsored Cerdes's testimony during that hearing." R. Doc. 1 at 11. Drawing inferences in Cerdes favor, the Complaint thus alleges that the Government *itself* credits Cerdes's story that he was framed by Scott. *See Baker*, 75 F.3d at 196.

The Government's arguments in opposition are unavailing. First, it argues that the Government maintained that Cerdes was guilty of *some* crime at Scott's sentencing hearing. It points to the prosecutor's statement to the jury: "Think about Junior Cerdes. The defendant planted weed in his truck. Mr. Cerdes had weed in his house already. He was guilty. There was a crime, but Defendant Scott exploited his vulnerability, put marijuana in his truck to rachet up a sentence to hurt him." R. Doc. 13-1 at 12. However, the Court has already explained that it will not consider the transcript of Scott's sentencing hearing on the instant 12(b)(6) motion. Moreover, the prosecutor's statement can actually be read to *support* Cerdes's argument that Scott planted the drugs in Cerdes's truck and thus framed him for at least some of the crimes charged in Case 06-115. Crucially, the full context of the prosecutor's comments is missing, and the Court cannot discern whether the "weed in [Cerdes's] house" was the basis of the particular charges brought against Cerdes. That is, it is not clear whether the charges in Case 06-115, "marijuana conspiracy, possession of marijuana with intent to distribute it and a § 924(c) charge," were based on the marijuana planted in the truck or on any marijuana allegedly found in the house or both. R. Doc. 1 at 8. Overall, the Court will not construe the remarks made at Scott's sentencing against Plaintiffs at this stage.

The Government also posits that prosecutors may have only agreed to dismiss the Indictment against Cerdes based on the "impossibility or impracticability" of litigating the case

14

against Cerdes eighteen years after the events occurred. *Id.*; *Lemoine*, 168 So. 3d at 368. However, this argument is inapposite on a 12(b)(6) motion. At this stage, the Court must draw all inferences in favor of the plaintiff. *Baker*, 75 F.3d at 196. Accordingly, *inferring* that the Government decided to withdraw its objection to Cerdes's petition for coram nobis based on mere practical reasons, rather than on the basis of the apparent merit of the petition, would be inappropriate. *See id.*

### ii. Probable Cause

Defendant also argues that Plaintiffs fail to adequately allege the absence of "probable cause" for the charges in Case 06-115. "The crucial determination for determining probable cause is whether the investigative or law enforcement officers 'had an honest and reasonable belief in the guilt of the accused at the time they pressed charges.'" *Vidrine v. United States*, 846 F. Supp. 2d 550, 559 (W.D. La. 2011) (quoting *Jones v. Soileau*, 448 So. 2d 1268, 1272 (La. 1984)).

Here, the Complaint alleges sufficient facts to support a finding that Scott did not have an "honest" belief that Cerdes was guilty of the crimes charged in Case 06-115. Cerdes alleges that Scott "decided to orchestrate a campaign to maliciously prosecute Cerdes for crimes he did not commit" and provides a highly detailed narrative regarding Scott's planting drugs in Cerdes's truck and attempting to coerce him into falsely testifying against others through the threat of a federal firearms charge. Cerdes, in fact, specifically alleges that Scott "procured th[e] indictment despite his knowledge that he had framed Cerdes and that the charges were malicious and lacked probable cause." R. Doc. 1 at 9.

The Government argues that information described in the Factual Bases of Cerdes and Quintanilla suggests that law enforcement did have probable cause to search Cerdes residence on the night of November 14, 2025. R. Doc. 13-1 at 14. For example, it argues that law enforcement received a tip from a confidential informant regarding a marijuana delivery to Cerdes and that marijuana was actually found in Cerdes's house. *Id.* As already explained, the Court will not

15

consider the Factual Bases nor accept their statements as true to refute Plaintiffs' allegations on the instant motion. Moreover, the Court agrees with Plaintiff that "the Government fails to consider probable cause for each charge individually, i.e., charge by charge." R. Doc. 18 at 24. For example, one of the charges brought against Cerdes was a § 924(c) charge for possession of a firearm in furtherance of a drug trafficking crime. R. Doc. 1 at 8. The Complaint specifically alleges that Scott planted marijuana in Cerdes's truck, where Cerdes had been driving with his gun, so that Scott could falsely charge Cerdes with this offense. *Id.* at 5. Thus, even if law enforcement had probable cause to search Plaintiffs' home, the Complaint at least alleges that Scott did not have an "honest and reasonable belief" that Cerdes was guilty of the § 924(c) charge.

The Government also argues that the grand jury's indictment of Cerdes in Case 06-115 shows that probable cause existed. This argument is inapposite given that Plaintiffs allege that Scott fabricated the charges and evidence which were presented to the grand jury. R. Doc. 1 at 9.

### iii. Malice

Next, the Government argues that Plaintiffs fail to allege that Scott acted with malice. The Government quotes *Miller v. East Baton Rouge Sheriff's Department* for the proposition that "[m]alice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime." 511 So. 2d 446, 453 (La. 1987). The Government then proceeds to argue that Plaintiffs' allegations that Scott bore Cerdes "active animosity," based on their interactions while Scott was a bartender and Scott's relationship with Cerdes's ex-wife, are insufficient because they do not allege that Scott framed Cerdes for his own "private advantage" within the meaning of these examples.

The problem with this argument, as Plaintiffs point out, is that the Government has omitted

16

the immediately preceding sentences of the rule statement from *Miller*, which read: "[a]ny feeling of hatred, animosity, or ill will toward the plaintiff, of course, amounts to malice. But it is not essential to prove such ill will." 511 So. 2d at 453. Accordingly, the Government's argument that Plaintiffs' allegations of "active animosity" fail to meet the Louisiana Supreme Court's definition of "malice" is plainly without merit. R. Doc. 1 at 3.

Further, as Plaintiffs note, the Complaint also alleges that Scott framed Cerdes "because he wanted to try to coerce Cerdes into making incriminating statements about other people Scott was targeting in Tangipahoa Parish." R. Doc. 1 at 4. Plaintiffs also allege that when Scott visited Cerdes in jail, he attempted to coerce him into falsely testifying against others: "Scott had specific targets in mind when he talked with Cerdes, including two individuals who were acquainted with Cerdes and were small time cocaine users. Scott told Cerdes he wanted Cerdes to say that he had sold cocaine to one of the individuals." R. Doc. 1 at 7. Plaintiffs explain that such tactics were how Scott "advanced his own career" as a federal DEA agent. R. Doc. 18 at 27. Thus, even under the Government's curated definition of the malice element, Plaintiffs have alleged that Scott acted for his own "private advantage" by attempting to use Cerdes to frame and prosecute others in the community.

C. **Melissa Cerdes Has a Viable Claim For Loss of Consortium.**

Next, the Government seeks dismissal of Melissa Cerdes's claim for loss of consortium based on the malicious prosecution of her husband. It argues that "[n]either the FTCA or Louisiana law recognizes a cause of action for what is essentially alleged here as 'bystander damages' for malicious prosecution." R. Doc. 13-1 at 25. However, the Government cites nothing in support of this statement. Further, Plaintiffs present a case, *Vidrine v. United States*, in which a wife indeed recovered for loss of consortium arising out of her husband's malicious prosecution FTCA claim. 846 F. Supp. 2d 550, 637 (W.D. La. 2011). The Court explained that "[p]ursuant to Louisiana law,

17

a cause of action exists for 'loss of consortium, service, and society' for the spouse of an injured victim." *Id.* (*quoting Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569, 573 (La. 1997)). It noted that the "compensable elements of a claim for loss of consortium . . . include loss of love and affection, loss of companionship, loss of material services, loss of support, impairment of sexual relations, loss of aid and assistance, and loss of felicity." The court found that the wife could succeed on her loss of consortium claim because she testified that after the malicious indictment of her husband, he was "perpetually absent," they "no longer did things together they had done before." *Id.*

Here, Plaintiffs allege that Cerdes served an 18-month prison sentence arising out of the false charges in Case 06-115. R. Doc. 1 at 10. Melissa Cerdes avers that she "suffered the loss of her husband Cerdes's love, companionship, affection, and financial support during his period of incarceration, as well as the extreme mental anguish and distress caused by watching a loved one be maliciously prosecuted by a federal agent on false and baseless charges." R. Doc. 1 at 12. Such an allegation is sufficient to allege loss of consortium. The Government has offered no legal argument or case law to support its position that a loss of consortium claim is not available in the FTCA context. Thus, the Court will not dismiss Melissa Cerdes's claim at this stage.

**D. All Other Issues Raised in the Government's Motion are Largely Moot.**

The Government also seeks dismissal of (1) any malicious prosecution claim based on the state charges brought against Cerdes prior to the filing of federal charges in Case 06-115 and (2) any other claims by Cerdes such as false arrest arising out of his "wrongful conviction." R. Doc. 13 at 19-24. Plaintiffs clarify that they are bringing no such claims. R. Doc. 18 at 27-29. Accordingly, these issues are moot.

Further, the parties agree that "there is no independent cause of action for conspiracy" and that Plaintiffs are not bringing a conspiracy claim separately from Cerdes's malicious prosecution

18

claim. R. Doc. 18 at 28. Rather, Plaintiffs clarify that "the conspiracy alleged in the Complaint is tied to the commission of the malicious prosecution claim." *Id.* As explained extensively above, Cerdes's malicious prosecution claim meets federal pleading requirements. Thus, the issue appears to be largely moot. To the extent that the parties *still* dispute whether Plaintiffs adequately allege that Scott conspired with others, the Court observes that the Compliant indeed states that both Scott and Martin "pretended to search" Cerdes's truck for drugs. R. Doc. 1 at 5. Further, Plaintiffs allege that Scott and Martin both visited Cerdes in jail, where Scott "gloated about how he had cause Cerdes to be arrested on another trumped-up charge." *Id.* at 8. As Plaintiffs argue, "these facts support a reasonable inference that Scott and Martin agreed and conspired to participate in the malicious prosecution of Cerdes." R. Doc. 18 at 28.

V.  **CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** that the Government's motion to dismiss, R. Doc. 13, is **DENIED.**

New Orleans, Louisiana, this 2nd day of May, 2025.

_____

HONORABLE ELDON E. FALLON