## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JULIUS CERDES, JR. AND** | * | **CIVIL ACTION NO. 24-2866** |
| **MELISSA CERDES** | * | **c/w NO. 25-142** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| | * | |
| **UNITED STATES OF AMERICA** | * | **MAGISTRATE JUDGE** |
| | * | **KAREN WELLS ROBY** |
| * * * * * * * * | | |

## ORDER & REASONS

Before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), one by Heath Martin and the other by the City of Hammond.[1] R. Docs. 30, 31. Plaintiffs Julius and Melissa Cerdes oppose the motions. R. Docs. 38, 39. Heath Martin replied. R. Doc. 40. The Court permitted Plaintiffs to file a sur-reply to address arguments raised for the first time in Martin's reply brief. R. Docs. 41, 45. Considering the record, briefing, and applicable law, the Court now rules as follows.

### I.    BACKGROUND

This case arises out of alleged misconduct by corrupt former DEA agent Chad Scott ("Scott"). Case No. 24-2866, R. Doc. 1 at 1. Plaintiff Julius Cerdes ("Cerdes") avers that Scott and his associate, Heath Martin ("Martin"), framed Cerdes for crimes he did not commit. *Id.* Scott then orchestrated the prosecution of Cerdes on false federal charges and eventually coerced him into pleading guilty to those charges ("Case No. 06-115").[2] *Id.* The Fifth Circuit has now vacated Cerdes's guilty plea, and the Government has voluntarily dismissed the Indictment against him.

---

[1]    Both motions to dismiss relate to Plaintiffs' First Amended Complaint filed in Case No. 25-142, which has since been consolidated under this lead docket number. This Order & Reasons will refer to this First Amended Complaint by "Complaint" for simplicity.

[2]    Cerdes was charged with a three-count indictment on April 13, 2006, in the Eastern District of Louisiana under criminal docket number 06-115. The indictment charged him with marijuana conspiracy, possession of marijuana with intent to distribute, and possession of a firearm in relation to a drug trafficking crime.

1

*Id.* at 11. Scott, who was convicted in 2021 of crimes arising from official misconduct in his role as a federal officer, is currently serving a 13-year prison sentence. *Id.* at 10. Cerdes now brings a suit against the United States under the Federal Tort Claims Act and against Martin and the City of Hammond (the "City") under 42 U.S.C. § 1983 and state law tort theories, alleging that Cerdes was maliciously prosecuted in Case No. 06-115. *Id.* at 12; Case No. 25-142, R. Doc. 4 at 12.

The incidents underlying this case began nearly twenty years ago. Case No. 25-142, R. Doc. 4 at 3. Cerdes alleges that on November 14, 2005, he took his boat out for a shrimping trip with his deckhand "Bud" Tilley ("Tilley"). *Id.* That evening, Cerdes and Tilley returned to Cerdes's house in Ponchatoula, Louisiana where they discovered that a Drug Enforcement Administration ("DEA") taskforce had "taken over Cerdes's house and was conducting a search of it." *Id.* at 3. He avers that Scott, as well as "[s]everal now-disgraced members of Scott's DEA taskforce" were on the scene. *Id.* These other officers included Karl Newman, a Tangipahoa Parish Sheriff Deputy, and Defendant Heath Martin, a City of Hammond police officer, both assigned to Scott's DEA taskforce. *Id.* at 3-4.

Cerdes alleges that when he arrived, the taskforce already had in custody his wife, Melissa Cerdes, his acquaintance, Raymond Quintanilla, and Quintanilla's wife. *Id.* at 3. Cerdes and Tilley were also placed under arrest. *Id.* at 4. Cerdes told agents that he had a firearm located in his back pocket, which he regularly carried on shrimping trips. *Id.* Members of the task force seized the firearm. *Id.* A drug dog then searched Cerdes's vehicle but found no drugs. *Id.* Cerdes and Tilley were then separated, and Tilley began talking with Defendant Martin, as they were friends. *Id.* Martin offered Tilley, "[i]f there is anything I can do to help you, just let me know." *Id.* Tilley replied that there was a bag of marijuana in his boot, and he would "surely appreciate" if Martin could "get rid of that." *Id.* At that point, Martin brought the marijuana to Scott. *Id.*

Cerdes alleges that Scott "knew the law" regarding 18 U.S.C. § 924(c)—possession of a firearm in furtherance of drug trafficking—which carries a mandatory minimum five-year sentence. *Id.* at 5. "Presented with the opportunity," he decided to frame Cerdes for this crime.[3] *Id.* Cerdes alleges that Scott and Martin conspired together to plant the bag of marijuana in Cerdes's truck, which they later pretended to find where they placed it. *Id.* Scott then told Cerdes, "Now I have you with the gun protecting the drugs and you will do more time than the Mexican in your shop with the dope."[4] *Id.* At the conclusion of the raid, "Scott and/or Martin" then caused Cerdes to be arrested on false state charges of possession with intent to distribute. *Id.*

Afterwards, Cerdes alleges that "Scott lied, manipulated, and worked behind the scenes to rig the scales against Cerdes at every stage of the ensuing criminal proceedings, starting with state court." *Id.* at 6. First, Scott caused the seizure of Cerdes's assets, including three boats and $74,000, and initiated forfeiture proceedings despite knowing the assets were not connected to a crime. *Id.* at 5. He also caused Cerdes's bond to be set at one million dollars to give himself leverage and eventually offered to get the bond lowered if Cerdes agreed to "debrief" with him. *Id.* at 6. Cerdes agreed and received a bond reduction. *Id.* After Cerdes paid the lowered bond amount and was released from jail, he spoke with Bud Tilley, who relayed that he gave the marijuana in his boot to Martin. *Id.* Cerdes told Tilley's story to his attorneys in confidence. *Id.* Unbeknownst to Cerdes,

---

3      Cerdes alleges that Scott had significant "personal animosity" toward him. Case No. 25-142, R. Doc. 4 at 3-4. He represents that he knew Scott "from the Ponchatoula, Louisiana area since before Scott was a DEA agent or even a police officer, going back to when Scott was a bartender at local clubs." *Id.* According to Cerdes, "Scott had always disliked [him] to the point of active animosity, probably based on interactions they had while Scott was a bartender and Scott's personal relationship with Cerdes'[s] ex-wife." *Id.* Cerdes alleges that "because of his personal animosity towards Cerdes, and because he wanted to try to coerce Cerdes into making incriminating statements about other people Scott was targeting in Tangipahoa Parish, Scott had decided to orchestrate a campaign to maliciously prosecute Cerdes for crimes he did not commit." *Id.* at 4-5.

4      It is the Court's understanding that the "Mexican in [Cerdes's] shop with the dope" refers to Mr. Quintanilla, who has sold marijuana to Cerdes in the past, but only for Cerdes's "personal consumption." Case No. 25-142, R. Doc. 4 at 3. Cerdes asserts throughout the Complaint that he never conspired with Quintanilla to distribute marijuana, nor ever possessed marijuana with the intent to distribute it. *Id.*

his attorneys were allegedly associates of Scott, and Cerdes claims that Scott got them to disclose confidential information to him. *Id.* at 6-7.

Cerdes, now out on bond, agreed to meet with Scott at the Tangipahoa Sheriff's office—at Scott's suggestion and without his attorneys present—so that Cerdes could "winterize" his seized boats. *Id.* at 7. During the meeting, Scott explained that he wanted Cerdes to "cooperate with him" to frame other people. *Id.* Scott had "two targets in mind"—small time cocaine users with whom Cerdes was acquainted. *Id.* Scott wanted Cerdes to lie and say he sold cocaine to one of the individuals. *Id.* Scott also wanted Cerdes to lie and "admit" that he was involved with his acquaintance Quintanilla (to whom Scott referred to as the "Mexican in [Cerdes's] shop with the dope") in a scheme to sell marijuana. *Id.* at 5, 7. Scott threatened Cerdes with filing the federal § 924(c) charge against him and "dangled the possibility that he would not proceed with forfeiting the boats if Cerdes would tell Scott what he wanted to hear." *Id.* at 6. Cerdes "reluctantly agreed to Scott's demands because he feared the possibility of federal charges with a mandatory minimum five-year sentence." *Id.*

Cerdes then met with Scott and his attorneys and "stuck with the script Scott had fed him," stating that he had been involved in distributing marijuana and cocaine. *Id.* at 8. Despite his promises, Scott nevertheless moved forward with forfeiting Cerdes's boats. *Id.* Feeling angry and tricked, Cerdes objected to the forfeiture and indicated that he would fight the false criminal charges. *Id.* At that point, Scott arranged for Cerdes to be arrested and charged with the false marijuana and cocaine offenses in state court. *Id.* Scott and Martin then went to the jail where Cerdes was being held. *Id.* Scott "gloated about how he had caused Cerdes to be arrested on another trumped-up charge" and again demanded that Cerdes cooperate with him or face the false § 924(c) charge. *Id.* Scott threatened, "who do you think they are going to believe, me or you?" *Id.* Cerdes,

however, "told Scott and Martin he was rejecting their demands." *Id.*

Once Cerdes made bail on the "bogus" cocaine charge, he filed a formal complaint with the DEA about Scott's behavior. *Id.* at 9. Shortly thereafter, "Scott carried through with his threat of having Cerdes falsely charged in federal court." *Id.* On April 13, 2006, a three-count indictment was filed in the Eastern District of Louisiana in Case No. 06-115, charging Cerdes with a marijuana conspiracy, possession of marijuana with intent to distribute, and a § 924(c) charge. *Id.* Cerdes alleges that "Scott procured this indictment despite his knowledge that he had framed Cerdes (with the help of Martin) [sic] and that the charges were malicious and lacked probable cause." *Id.* Cerdes was ordered detained.[5] *Id.*

Cerdes avers that "[b]eaten down by Scott's power to lie, cheat, and manipulate the criminal justice system with impunity, and fearing conviction on a § 924(c) charge with a mandatory five-year sentence, [he] ultimately agreed to a plea agreement requiring him to plead guilty to the marijuana conspiracy in exchange for dismissal of the § 924(c) charge and the possession-with-intent charge." *Id.* at 10. He was eventually sentenced to 18 months' imprisonment. *Id.* He also alleges that "[a]s part of the plea agreement, the U.S. government took the highly unusual step of requiring Cerdes to withdraw his complaint to the DEA about Scott." *Id.* Additionally, Cerdes was required to consent to forfeiture of the boats and money Scott had seized. *Id.*

As a result of this alleged wrongful conviction, Cerdes served his entire 18-month sentence as well as two years of supervised release. *Id.* He also became a "prohibited person" unable to

---

5    Cerdes avers that while he was being held on the federal charges, Scott caused him to be transferred to a different dorm that also housed an individual named Calvin Jenkins, who was "acting as an informant for Scott." *Id.* When Cerdes was eventually released on bond, the Government moved to revoke him less than a week later, alleging that "while Cerdes had been housed in the dorm with Jenkins, Cerdes had offered Jenkins $20,000 to kill Scott." *Id.* at 9-10. Cerdes maintains that "this allegation was a complete fabrication on the part of Scott and Jenkins[,] [b]ut Scott's ploy worked, and Cerdes was again ordered detained." *Id.* at 10.

possess firearms within the meaning of 18 U.S.C. § 922. *Id.* Because of this, Cerdes was charged several years later with possession of ammunition by a prohibited person. *Id.* He ultimately pleaded guilty to that charge and was sentenced to probation. *Id.*

Cerdes alleges that in early 2016, Louisiana State Police arrested one of Scott's subordinates on the Tangipahoa Parish Drug Taskforce for a variety of drug crimes. *Id.* at 11. He avers that "the resulting investigation led to an exhaustive federal investigation of Scott's activities over the years he had been a DEA agent." *Id.* Eventually, Scott was charged with and convicted of a variety of federal crimes. *Id.* He was sentenced to 160 months' imprisonment for his misconduct. *Id.*

During this investigation, the Government allegedly discovered Cerdes's complaint to the DEA about Scott. *Id.* Thereafter, Cerdes represents that "the federal government performed a thorough investigation of Cerdes's allegations, and on information and belief came to believe he was telling the truth about how Scott, with the help of Martin, had framed Cerdes and forced him to plead guilty to crimes he did not commit." *Id.* The Government therefore asked him to be a witness during Scott's sentencing. *Id.* Cerdes avers that the Government "sponsored Cerdes's testimony during that hearing, in which he testified that he was in fact innocent of the charges from [Case No. 06-115] and that Scott, with the assistance of Defendant Martin, had framed him, planted evidence, and forced him to plead guilty to crimes he did not commit." *Id.*

Around the same time, Cerdes filed a "petition for a writ of coram nobis" in Case No. 06-115, "contending that his conviction should be vacated because of Scott's misconduct." *Id.* Although the district court initially denied the petition as untimely, the Fifth Circuit reversed that decision,[6] holding that Cerdes's delay in filing the *coram nobis* petition was reasonable based on

---

[6] *United States v. Cerdes*, No. 23-30141, 2023 WL 8725914 (5th Cir. Dec. 19, 2023).

the continuing threat Scott posed by virtue of his role as a government agent. *Id.* The Circuit found

that the threat remained until Scott was criminally charged, after which Cerdes timely filed. *Id.*

On remand, the Government withdrew its opposition to Cerdes's *coram nobis* petition, and

the district court vacated Cerdes's conviction. *Id.* at 12. Citing "the interest of justice," the

Government then moved to dismiss the Indictment against Cerdes, which the district court granted

on January 31, 2024. *Id.*

Cerdes has now filed two cases because of Scott and Martin's alleged wrongdoings, which

have since been consolidated before this Court. He first brought a claim for "malicious

prosecution" against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 2671 *et seq.* Case No. 24-2866, R. Doc. 1 at 12. He avers that he suffered wrongful

conviction and incarceration, "with all the mental, emotional, financial, and reputational harms

that such a malicious prosecution and wrongful conviction and imprisonment engender." *Id.* at 11-

12. Cerdes also seeks damages for the "adverse collateral consequences of a felony conviction,

including the loss of his Second Amendment rights." *Id.* at 12. Moreover, he asks for "financial

damages through the unlawful seizure of his property, namely, the boats and money wrongfully

forfeited as part of the criminal proceedings." *Id.* Melissa Cerdes separately brings a claim for "the

loss of her husband's love, companionship, affection, and financial support during his period of

incarceration, as well as the extreme mental anguish and distress caused by watching a loved one

be maliciously prosecuted by a federal agent on false and baseless charges." *Id.*

Plaintiffs later brought a separate suit against Heath Martin and his employer, the City of

Hammond. *See* Case No. 25-142, R. Doc. 4. Cerdes asserts § 1983 claims against Martin based on

constitutional violations to his Fourteenth Amendment due process rights and Fourth Amendment

rights to be free from both unreasonable seizure and malicious prosecution. *Id.* at 13-14. He also

brings a state-law malicious prosecution claim against Martin and against the City of Hammond under a *respondeat superior* theory. *Id.* at 15. The Complaint alleges that at all relevant times, and to the extent that Martin was not considered an employee of the Government while he was assigned to Scott's federal task force, Martin was an employee of the City of Hammond.[7] *Id.*

## II.    PRESENT MOTIONS

Heath Martin and the City of Hammond each move to dismiss Plaintiffs' suit for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. Docs. 30, 31. Both Martin and the City assert that Plaintiffs are time-barred from bringing their § 1983 claims. *See* R. Doc. 30-1 at 3-4; R. Doc. 31-1 at 10-11. They also each argue that Plaintiffs have failed to adequately plead elements of their state law malicious prosecution claim.[8] *See* R. Doc. 30-1 at 5-8; R. Doc. 31-1 at 6, 8-9. The City individually asserts that Plaintiffs failed to state a § 1983 *Monell* liability claim against it. R. Doc. 31-1 at 11. The City also asks this Court to take judicial notice of certain public records for both evidentiary and liability-limiting purposes. *Id.* at 5-10.

Plaintiffs oppose each motion. R. Docs. 38, 39. Overall, they argue that their § 1983 claims are timely and that the Complaint adequately pleads all six state law malicious prosecution elements.[9] R. Doc. 38 at 9-15; R. Doc. 39 at 12-14. As to Martin's motion, Plaintiffs ask this Court to retain supplemental jurisdiction over their state law claims should the § 1983 claims be dismissed as untimely. R. Doc. 38 at 12. And as to the City's motion, Plaintiffs posit that the Court should not take judicial notice of the City's public records exhibits because the documents are highly contested. R. Doc. 39 at 10. Plaintiffs further assert that they have adequately pled a

---

7       Alternatively, Cerdes pleads that the United States and the City could be jointly liable for the torts committed by Martin in the course and scope of his employment. *Id.*

8       Martin individually requests the Court decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if their federal claims are deemed to be prescribed. R. Doc. 30-1 at 4-5.

9       Plaintiffs, however, request leave to amend their Complaint if the Court perceives any deficiencies. R. Doc. 38 at 16; R. Doc. 39 at 14.

*respondeat superior* theory of liability against the City and concede that they are not presently bringing a *Monell* claim. *Id.* at 11-13.

Martin replied, largely reiterating his original arguments but raising for the first time that he should be entitled to qualified immunity on Cerdes's § 1983 Fourth Amendment claim for malicious prosecution. R. Doc. 40 at 5-6. Plaintiffs filed a sur-reply after requesting leave of court to address Martin's qualified immunity argument. R. Doc. 46.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. A court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV.    DISCUSSION

The parties largely dispute (1) whether Plaintiffs' federal and state law claims are time-barred and (2) the pleading adequacy of Plaintiffs' state law malicious prosecution claim. The City

further disputes its liability for Martin's actions. Martin additionally argues that he is entitled to qualified immunity on Cerdes's § 1983 malicious prosecution claim. The Court first addresses the City's request for it to take judicial notice of certain evidence and documents in deciding the instant motion. The Court then takes each remaining issue in turn.

## A. The Court Will Decline to Consider the Documents Cited by the City of Hammond.

A court generally may not look beyond the plaintiff's complaint when deciding whether to grant a Rule 12(b)(6) motion. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003); *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). There is, however, an exception to the standard rule. The Fifth Circuit in *Collins v. Morgan Stanley Dean Witter* held that a district court may rely on evidence outside the complaint without converting the Rule 12(b)(6) motion into a summary judgment motion when the evidence is: (1) attached to the motion, (2) referred to in the complaint, and (3) central to the plaintiff's claim or is subject to judicial notice. 224 F.3d 496, 498-99 (5th Cir. 2000); *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022). The Circuit explained that "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

Certain facts are subject to judicial notice under Federal Rule of Evidence 201. "The court *may* judicially notice a fact *that is not subject to reasonable dispute* because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b) (emphasis added). "Rule 201 authorizes the court to take notice only of 'adjudicative *facts*,' not legal determinations." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998) (quoting Fed. R. Evid. 201). Further, the notice "is limited to the existence of the document, 'not to prove the truth of the documents' contents.'" *Ambler v. Williamson Cnty., Tex.*, No. 20-1068, 2021 WL

769667, at *3 (W.D. Tex. Feb. 25, 2021) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)).

Here, the City requests this Court take judicial notice of four different documents attached to its motion. *See* R. Doc. 31. The Court declines to take notice of any of the attachments. First, the Court will not consider Cerdes's state court criminal records and minutes because these documents are irrelevant to whether Cerdes adequately plead his causes of action. *Collins*, 224 F.3d at 499. Plaintiffs' malicious prosecution claim is based only on Cerdes's federal charges, not either of his state court criminal prosecutions. *See* R. Doc. 38 at 12. The Court does not need to observe any alleged probable cause contained in the state court criminal records—the only probable cause relevant here is the probable cause, or lack thereof, in Cerdes's federal case, Case No. 06-115. Similarly, Martin's payroll records are irrelevant because there is no dispute that Martin was employed by the City from 2005-2006, when the Complaint alleges Martin's unlawful conduct occurred.[10] *See* Case No. 25-142, R. Doc. 4 at 3-9 (explaining that Cerdes's arrest occurred in November 2005 and describing the actions of Scott and Martin as occurring between then and April 13, 2006).

Next, the Court declines to take these attachments into consideration because the City wishes for the Court to observe their contents as true rather than merely observe the documents for their existence. *Ambler*, 2021 WL 769667, at *3. The Court can only take judicial notice of the facts contained in the public records if they are "not subject to reasonable dispute." Fed. R. Evid. 201(b). As Plaintiffs point out here, the state criminal records contain "DEA reports and other

---

[10]    Similarly, further fact-finding is necessary to determine whether Martin acted as a City employee or otherwise when taking the alleged wrongful actions, making an evaluation of the state court criminal records for the presence and/or absence of the City and its police department inappropriate in the 12(b)(6) context. *See* R. Doc. 39 at 11 (Plaintiffs arguing that it may agree with the City after further fact-finding that the United States was Martin's employer at all times relevant to the Complaint).

documents that are highly contested" because "this whole case is about how Scott, with the assistance of Martin, lied and manipulated the reports and events in this case to frame Mr. Cerdes." R. Doc. 39 at 10. Examining such documents and accepting their contents as true could put the Court in a position of refuting Plaintiffs' well-pled allegations, which is inappropriate at the motion to dismiss stage. Instead, the Court will analyze whether the allegations in the Complaint, taken as true, are sufficient to sustain Plaintiffs' claims. *Iqbal*, 556 U.S. at 678.

With this in mind, the Court will now determine the merits of the City's and Martin's motions to dismiss without consideration of any exhibits.

**B. Plaintiffs' Claims Are Not Time Barred.**

Both Martin and the City argue that Plaintiffs claims should be dismissed as untimely. Martin argues that Plaintiffs' § 1983 claims are time-barred, and the City argues that Plaintiffs' state law claims have prescribed. R. Doc. 30-1 at 3-4; R. Doc. 31-1 at 8-11. These arguments fail. Cerdes's federal and state law claims are timely for the following reasons.

**a. Plaintiffs' § 1983 Claims Are Timely.**

There is no federal statute of limitations for actions brought under § 1983, so federal courts borrow the forum state's limitations period. *Owens v. Okure*, 488 U.S. 235, 239, 250-51 (1989). In Louisiana, that period is one year for injurious acts that occurred before July 1, 2024. *Brown v. Pouncy*, 93 F.4th 331, 332 (5th Cir. 2024); *compare* La. Civ. Code art. 3492 (repealed 2024) ("Delictual actions are subject to a liberative prescription of one year.") *with* La. Civ. Code art. 3493.1 (eff. July 1, 2024) ("Delictual actions are subject to a liberative prescription of two years."). There is no dispute that Louisiana's one-year statute of limitations will apply to all four of Cerdes's theories of constitutional injury.

Though state law controls how long a plaintiff has to file suit after experiencing an alleged

12

injury, federal law controls in determining the date upon which the statute of limitations period begins to run. *Piotrowski v. City of Hous.*, 237 F.3d 567, 576 (5th Cir. 2001). This analysis is not always as simple as a claim accruing within one year of the alleged injurious actions. *See McDonough v. Smith*, 588 U.S. 109, 115-16 (2019). For example, the Supreme Court in *Heck v. Humphrey* altered the claim accrual timeframe for previously convicted criminal defendants bringing suits under § 1983. The "*Heck* bar" provides that these previously convicted criminal defendants—now § 1983 plaintiffs—will be barred from seeking damages in a § 1983 suit if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). The *Heck* bar will be lifted for criminal defendants, allowing them to file suits for damages, when their underlying criminal proceedings terminate in their favor. *Id.* Therefore, *Heck* operates as an interceding force in the statute of limitations analysis for some constitutional injury theories under § 1983, causing the claim accrual period to begin to run on the date that the underlying criminal proceedings terminated in the prior-defendant/now-plaintiff's favor.

Because "[a]n accrual analysis begins with identifying 'the specific constitutional right' alleged to have been infringed," the Court will take each of Cerdes's alleged constitutional injuries in turn to see if the *Heck* bar applies. *McDonough*, 588 U.S. at 115 (quoting *Manuel v. Joliet*, 580 U.S. 357, 370 (2017)). Cerdes brings claims for (1) violations of his Fourth Amendment right to be free from malicious prosecution, (2) violations of his Fourth Amendment right to be free from unreasonable seizure, (3) violations of his Fourteenth Amendment procedural due process rights based on fabrication of evidence, and (4) violations of his Fourteenth Amendment substantive due process rights based on actions committed by defendants that shock the conscience. *E.g.*, R. Doc. 38 at 9. All parties here agree that the underlying federal criminal proceedings in Case No. 06-115,

upon which all Cerdes's claims rest, terminated in his favor on January 31, 2024. Cerdes filed his Complaint in Civil Action No. 25-142 against Martin and the City on January 20, 2025—less than one year after favorable termination of his criminal conviction. Therefore, if each of Cerdes's constitutional theories rely on *Heck*'s favorable termination requirement, his claims are timely. The Court finds that each of his four claims are timely for the reasons explained below.

First, Cerdes's Fourth Amendment malicious prosecution claim is timely because the Supreme Court has explicitly held that *Heck*'s favorable termination requirement applies.[11] *Thompson v. Clark*, 596 U.S. 36, 39 (2022). Second, Cerdes's Fourth Amendment unreasonable seizure claim is timely because this theory closely resembles malicious prosecution, and those claims are bound by the favorable termination requirement. *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2020) (explaining the difference in claim accrual dates based on whether the Fourth Amendment claim more closely resembles false imprisonment or malicious prosecution); *see also Morgan v. Chapman*, 629 F. Supp. 3d 616, 624 (S.D. Tex. 2022) (quoting *Winfrey*, 901 F.3d at 493) ("An unlawful detention under legal process, as opposed to 'detention with no legal process,' is most analogous to malicious prosecution."). Third, Cerdes's Fourteenth Amendment procedural due process claim based on fabrication of evidence is timely because the Supreme Court has also explicitly held that the *Heck* bar applies there, too. *McDonough*, 558 U.S. at 114-15.

Cerdes's final constitutional theory, the Fourteenth Amendment substantive due process claim based on actions that shock the conscience, however, requires further analysis because neither the Supreme Court nor the Fifth Circuit have definitively stated whether *Heck* applies and alters the accrual timeframe. Instead, in *McDonough v. Smith*, the Supreme Court explicitly declined to "consider the proper [claim accrual rule] of a fabricated-evidence claim founded on an

---

[11] While this claim would be timely based on Supreme Court precedent, as the Court will explain later, Cerdes is barred from pursuing this theory.

allegation that the use of fabricated evidence was so egregious as to shock the conscience." 588 U.S. at 115 n.2. Therefore, the Court must determine if the *Heck* doctrine applies in its own right, as that case commands that "a district court *must consider* whether a judgment in favor of the plaintiff would necessarily imply the validity of his conviction or sentence." 512 U.S. at 487 (emphasis added). To determine if a judgment in plaintiff's favor would do so, the Court will look to the elements of a substantive due process/fabrication of evidence claim and assess whether a civil judgment in a § 1983 claimant's favor would call into question a valid criminal judgment.

The Fifth Circuit recognizes a "substantive due process right to 'not have police deliberately fabricate evidence and use it to frame and bring false charges against a person.'" *Traylor v. Yorka*, No. 22-10783, 2024 WL 209444, at *4, *4 n.3 (5th Cir. Jan. 19, 2024) (quoting *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 580 U.S. 994 (2016), *opinion reinstated in relevant part*, 935 F.3d 444 (5th Cir. 2019) (en banc)); *see also Cole*, 802 F.3d at 773 ("Where police intentionally fabricate evidence . . . and the Fourth Amendment is unavailing, there may be a [substantive] due process violation."). District courts in this circuit have found that a plaintiff must show three things to succeed on a Fourteenth Amendment substantive due process/conscience-shocking fabrication-of-evidence claim: (1) that the officers fabricated evidence (2) for the purpose of falsely obtaining a charge and (3) that the evidence influenced the decision to charge. *See Cole v. Hunter*, 497 F. Supp. 3d 172, 190 (N.D. Tex. Oct. 29, 2020); *Welsh v. Williams*, No. 22-183, 2023 WL 11990749, at *14 (N.D. Tex. June 30, 2023). Further, the plaintiff "may prevail on his [substantive] due process claim *only if* he is able to show that the defendants intentionally or knowingly presented false evidence or fabricated evidence, and that their actions shock the conscience." *Rogers v. Lee Cnty., Miss.*, 684 F. App'x 380, 390 (5th Cir. 2017) (internal references omitted) (emphasis added).

The Court finds that, if Cerdes's criminal conviction was still standing, the validity of his conviction would be undermined if he secured a civil judgment in his favor on this substantive due process claim. *See Heck*, 512 U.S. at 487. To prevail on the substantive due process/conscience-shocking fabrication-of-evidence elements, Cerdes would need to prove at trial that Martin and Scott knowingly fabricated evidence, that they did so to falsely obtain the indictment in Case No. 06-115, and that the fabricated evidence was a causal factor in the decision to indict. *Id.* This Court sees no doubt that such a determination would call into question a standing criminal conviction. The alleged planting of marijuana in Cerdes's truck and later coercion by Scott and/or Martin of Cerdes to falsely admit to possessing and distributing marijuana goes to the heart of Cerdes's federal conviction in Case No. 06-115—namely, Cerdes's guilty plea to one charge for conspiracy to distribute marijuana. If Cerdes's federal charge for conspiracy to distribute marijuana had not yet terminated in his favor, and a civil judgment in Cerdes's favor relied on a finding that Martin and Scott knowingly planted marijuana in Cerdes's truck, the civil judgment would clearly threaten a standing criminal conviction because it rests on that alleged unlawful investigatory behavior. *See id.* at 484-86.

The determination that the *Heck* bar applies here is bolstered by the Tenth Circuit's enumeration of its elements of a substantive due process/fabrication of evidence claim. There, a plaintiff is required to establish four elements: "'(1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) *if the alleged unlawfulness would render a conviction or sentence invalid*, the defendant's conviction or sentence has been invalidated or called into doubt.'" *Scott v. City of Tulsa, Ok.*, 775 F. Supp. 3d 1190, 1209 (N.D. Ok. 2025) (quoting *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021)) (emphasis added). Thus, the Tenth Circuit recognizes

the inherent applicability of *Heck* to substantive due process claims, baking into its fourth element the possibility that there may be a case where a ruling in favor of a plaintiff would *not* call into question the validity of their underlying criminal conviction. *See id.*

Moreover, as a practical matter, Cerdes's claim that Martin fabricated evidence in a way that shocks the conscience is not materially dissimilar to his other constitutional injury theories to which *Heck* applies. Cerdes must still prove that Martin fabricated evidence to prove his procedural due process claim, and the Supreme Court has determined that those fabricated evidence claims are most analogous to the common law tort of malicious prosecution, which has a favorable-termination element. *McDonough*, 588 U.S. 118-20. It is true that "some claims do fall outside of *Heck*'s ambit when a conviction is merely 'anticipated.'"[12] *McDonough*, 588 U.S. at 119 (quoting and discussing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)). But "[t]here is not a 'complete and present cause of action' to bring a fabricated-evidence challenge to criminal proceedings while those criminal proceedings are ongoing." *Id.* (quoting *Wallace*, 549 U.S. at 388). The Court sees no reason to apply different reasoning here just because Cerdes has an additional burden to prove that Martin's conduct shocks the conscience.

Therefore, the Court finds that the *Heck* bar applies in its own right to Cerdes's substantive due process claim based on fabrication of evidence that shocks the conscience. His claim could not have accrued until the underlying criminal proceedings terminated favorably, lest his criminal

---

12      Contrast the Supreme Court's reasoning in *Wallace v. Kato* with the case at hand. There, the Court held that the statute of limitations in a § 1983 Fourth Amendment claim for false arrest/imprisonment begins to run at the time the claimant becomes detained pursuant to the legal process because, in part, a false imprisonment claim is based on detention *without* legal process. 549 U.S. 384, 388-89 (2007). Malicious prosecution, however, is relevant to claims of detention *pursuant to* legal process. *Id.* "[A] false imprisonment ends once the victim becomes held *pursuant to such [legal] process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* at 389-90. As a policy matter, the Court found that "[i]n an action for false arrest [a contrary rule] would require the plaintiff . . . to speculate about whether a prosecution will be brought, whether it will result in a conviction, and whether the pending civil action will impugn the verdict." *Id.* at 393. The case at hand is more analogous to malicious prosecution than false arrest. Therefore, the Court will not apply *Wallace*'s reasoning to the instant matter.

conviction be subject to collateral attack by a civil ruling in Cerdes's favor. Cerdes's substantive due process claim accrued on January 31, 2024. Because Cerdes filed suit within one year of that date, his substantive due process claim is timely.

### b. Plaintiffs' State Law Claims Are Timely.

The Court will now turn to whether Cerdes's state law claims are timely brought. "Malicious prosecution is a delictual claim, and is therefore subject to a one-year prescriptive period pursuant to Louisiana Civil Code article 3292." *Atkins v. Se. Cmty. Health Sys.*, No. 11-47, 2015 WL 9307269, at *4 (M.D. La. Dec. 21, 2015); *see also Murray v. Town of Mansura*, 2006-355, p. 7 (La. App. 3 Cir. 9/27/06), 940 So. 2d 832, 838 ("The liberative prescriptive period of Plaintiffs' malicious prosecution claim did not begin to run until the underlying prosecution was dismissed."). As the City concedes, the prescriptive period began to run on Cerdes's state law claims when the federal case terminated in his favor on January 31, 2024. R. Doc. 31-1 at 10-11. Cerdes filed the subject Complaint on January 20, 2025, eleven days before prescription. *See* Case No. 25-142, R. Doc. 1. Therefore, Cerdes's malicious prosecution claim is timely.

The Court notes that Cerdes amended his Complaint against Martin and an incorrectly named defendant, Tangipahoa Parish Sheriff Gerald Stickler, on February 19, 2025, to replace the incorrectly named defendant with the City of Hammond. Case No. 25-142, R. Doc. 4. Though not argued by the parties, the court notes that Fed. R. Civ. P. 15(c) allows the relation-back of an amendment to a pleading when:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if . . . the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii). The City does not address Rule 15 with respect to the timeliness

18

of Cerdes's Complaint. Instead, it simply states that "[t]he City was not served with the amended complaint until March 3, 2025." R. Doc. 31-1 at 11. The federal rules do not require defendants be served with complaints before the statute of limitations has run. Therefore, the City's argument is unavailing. In applying Rule 15, this Court finds that Plaintiffs' amendment sufficiently relates back to its original Complaint.[13] Therefore relation-back is allowed, and Cerdes's state law claims are timely.

### C. Plaintiffs Have Adequately Alleged a State Law Malicious Prosecution Claim.

Next, the Court will address whether Cerdes adequately pled his state law claims. Cerdes brings malicious prosecution claims against Martin under both § 1983 and Louisiana law.[14] Case No. 25-142, R. Docs. 1, 4. He also seeks to hold the City liable for Martin's unlawful conduct under a theory *respondeat superior*. *Id.* To bring a malicious prosecution claim, Cerdes must adequately plead six elements:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Id.* Defendants aver that Cerdes failed to articulate three of the six state law elements. R. Doc. 30-1 at 5-8; R. Doc. 31-1 at 8-9. Martin argues that the allegations fail as to causation and malice. R. Doc. 30-1 at 5-8. The City believes the allegations fail as to a lack of probable cause. R. Doc. 31-9. The Court addresses each argument in turn.

#### i. Causation as to Martin

---

13      First, the amendment changed the name of Martin's employer from Terrebonne Parish Sheriff's Office to the City of Hammond. Next, the Court cannot find, any reason for the City to be prejudiced in defending on the merits by allowing relation-back. Finally, the City, as Martin's employer, knew or should have known that this action would be brought against it since Cerdes sought to hold Martin's employer liable in his original, timely Complaint.

14      To succeed on his federal claim, Cerdes must prove a threshold element of an unlawful Fourth Amendment seizure and all state law malicious prosecution elements. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).

Legal causation is satisfied if the defendant caused the prosecution.[15] *See LeBlanc v. Pynes*, 46,393, p. 10 (La. App. 2 Cir. 7/13/11), 69 So. 3d 1273, 1281. Federal courts have found that this element is "satisfied against police officers if 'they have lied to or misled the prosecutor' or 'failed to disclose exculpatory evidence to the prosecutor.'" *Soto v. Monge*, 735 F. Supp. 3d 792, 804 (W.D. Tex. 2024) (quoting *Reyes v. Greer*, 686 F. Supp. 3d 524, 534 (W.D. Tex. 2023)) (discussing the Texas elements, which are nearly identical to the Louisiana elements, of state law malicious prosecution).

Martin argues that Cerdes has not adequately alleged that Martin was the legal cause of the initiation and continuation of Cerdes's criminal charges because Chad Scott, not Martin, was the clear antagonist of Cerdes's Complaint. R. Doc. 30-1 at 5-7. To counter this point, Cerdes argues that his Complaint establishes the causation element by stating that:

> Martin participated with Scott in planting the marijuana in Cerdes's truck and knew that Scott was actively attempting to frame Cerdes for crimes Cerdes did not commit. Despite this knowledge . . . Martin conspired and cooperated with Scott throughout Scott's unlawful campaign to frame Cerdes and force him to plead guilty to crimes he did not commit.

R. Doc. 38 at 13 (quoting R. Doc. 4 at 12). Plaintiffs agree that the main antagonist of their Complaint is Scott, but "that does not exonerate Defendant Martin for the part that he played in the underlying misconduct." *Id.* Martin replied by arguing that Cerdes's allegations are conclusory and that no particularized facts plausibly suggest that Martin was the legal cause of Cerdes's prosecution, and that this Court should find that Chad Scott was the legal cause of Cerdes's federal prosecution. R. Doc. 40 at 3-4.

The Court agrees with Plaintiffs. Martin does not cite nor could the Court find any case

---

15      This element is often defined in Louisiana in the context of a citizen reporting an incident to police and an officer's subsequent actions to investigate. *See Lemoine v. Wolfe*, 575 F. App'x 449, 456 (5th Cir. 2014), *certified question accepted*, 14-1546 (La. 10/31/14), 151 So. 3d 611, *certified question answered*, 14-1546 (La. 3/17/15), 168 So. 3d 362.

commanding that only one person must be the legal cause of a prosecution. *Cf. Winn v. City of Alexandria*, 960492, p. 5 (La. App. 3 Cir. 11/20/96), 658 So. 2d 281, 284 (discussing the elements of malicious prosecution as applied to multiple Alexandria Police Officers, finding "no question as to the presence of" legal causation). Additionally, the Complaint alleges that Martin took a bag of marijuana from his friend's boot, brought it to Scott, and together, they placed the marijuana in Cerdes's truck. R. Doc. 4 at 4-5. It also asserts that "Scott *and/or* Martin" caused Cerdes's arrest after the planted marijuana was "triumphantly . . . located." *Id.* at 5 (emphasis added). The Complaint also contends that Martin concealed exculpatory information, i.e. that the marijuana was planted, during Cerdes's prosecution. *Id.* at 13. Construing these allegations in a light most favorable to Cerdes, the Court finds that Cerdes's Complaint sufficiently alleges that Martin could have been a legal cause of the malicious prosecution. *Baker*, 75 F.3d at 196.

### ii. Probable Cause

Probable cause can be intertwined with malice because a lack of probable cause gives rise to an inference of malice. *E.g.*, *Miller*, 511 So. 2d at 453 ("[m]alice may be inferred from the lack of probable cause"). But courts must analyze it separately, with "[t]he crucial determination in regard to the absence of probable cause [being] whether the defendants had an honest and reasonable belief in the allegations they made." *Rivera-Colon v. Par. of St. Bernard*, 516 F. Supp. 3d 583, 590 (E.D. La. 2021) (quoting *Kelly v. W. Cash & Carry Bldg. Materials Store*, 99-102 (La. App. 4 Cir. 10/20/99), 745 So. 2d 743, 761). "Probable cause does not depend upon the actual state of the case in point of fact, but on the honest and reasonable belief of the party prosecuting." *Gentry v. Spillers*, 2020-1077, p. 10 (La. App. 1 Cir. 5/10/21), 325 So. 3d 398, 406. Even if an accusation has a malicious motive, there will be no liability imparted on the defendant if there was probable cause. *Way-Jo, LLC v. Anthony*, 2020-0361, p. 13 (La. App. 1 Cir. 12/30/20), 319 So. 3d

341, 350.

The City argues that the state court criminal records contain "[i]ncontrovertable facts" giving rise to an inference of probable cause, including two affidavits of probable cause. R. Doc. 31-1 at 9. But as previously discussed, at the motion to dismiss stage, it is inappropriate for this Court to take notice of any affidavits of probable cause. Doing so would not "assist[] the plaintiff in establishing the basis of the suit." *Collins*, 224 F.3d at 499. Further, these facts are "subject to a reasonable dispute" and thus not able to be considered by the Court pursuant to the Federal Rule of Evidence 201. *See* Fed. R. Evid. 201. The City advances no other arguments as to probable cause.

The Complaint alleges sufficient facts to support a finding that Martin did not have an "honest" belief that Cerdes was guilty of the crimes charged in Case No. 06-115. The Complaint plainly asserts that Martin knowingly planted someone else's marijuana in Cerdes's truck. Case No. 25-142, R. Doc. 4 at 4-5. The Complaint also alleges that Martin continued conspiring with Scott until and potentially beyond Cerdes's federal indictment, including Martin and Scott visiting Cerdes in jail, wherein Scott "gloated about how he had caused Cerdes to be arrested in another trumped-up charge." *Id.* at 8. Martin's continued participation in the framing of Cerdes further undermines any argument that Martin had an "honest belief" in Cerdes's guilt.

### iii.  Malice as to Martin

The element of malice "does not submit readily to definition" and "means something more than the fictitious 'malice in law' . . . . There must be malice in fact." *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987). While ill will towards the plaintiff can amount to malice, "it is not essential to prove such ill will." *Id.* Malice can also be inferred from a defendant using a malicious prosecution for personal gain, as well as "from the lack of probable cause or

inferred from a finding that the defendant acted in reckless disregard of the other person's rights." *Id.* Louisiana law therefore provides multiple avenues for a plaintiff to assert malice.

Martin argues that Plaintiffs have failed to prove that he acted with malice because the Complaint does not demonstrate that Martin had any personal animosity towards Cerdes. R. Doc. 30-1 at 7-8. Cerdes argues that there are many other ways to establish Martin's malice under Louisiana law than by simply showing personal animosity. R. Doc. 38 at 14-15. The Court agrees. As explained above, Louisiana law provides many avenues for a Plaintiff to plead malice— Plaintiffs do not *have* to show personal animosity. For example, they can allege Martin acted in reckless disregard of Cerdes's rights and/or used the malicious prosecution for personal gain. *See Miller*, 511 So. 2d at 453.

As Plaintiffs argue, the Complaint shows that Martin recklessly disregarded Cerdes's rights by participating in the fabrication of evidence and eventual arrest. *Id.* Moreover, accepting Plaintiffs' allegations as true, Martin took the marijuana from someone else's boot and conspired with Scott to plant it in Cerdes's truck. Case No. 25-142, R. Doc. 4 at 4-5. This also goes to Martin's reckless disregard for Cerdes's rights. Further, the Complaint asserts that Scott was Martin's "field trainer for the DEA" at the time the marijuana was planted. Case No. 25-142, R. Doc. 4 at 4. This fact, taken as true, could give rise to the inference that Martin planted the marijuana to further his own career for personal gain. *Id.* Considering all of this, the Court finds that Cerdes's Complaint contains adequate allegations of Martin's malice.

Overall, the Court finds that the Complaint adequately alleges a state law malicious prosecution claim.

### D. The City May Be Liable Under a Theory of *Respondeat Superior*.

The Court now turns to questions of the City's liability. The City argues that Plaintiffs have

failed to state a viable *Monell* liability theory against the City. R. Doc. 31-1 at 11. Plaintiffs represent that their Complaint does not attempt to state a theory of direct municipal liability. R. Doc. 39 at 13. However, Plaintiffs clarify that they may assert this theory later if discovery shows it to be appropriate. *Id.* at n.2. The Court will therefore only address whether the Complaint adequately pleads a state law liability theory of *respondeat superior* against the City.

Louisiana Civil Code art. 2320 provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320. Further, Civil Code art. 2317 states, in part, that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable." La. Civ. Code art. 2317. To hold an employer vicariously liable under the doctrine of *respondeat superior*, "three elements must be present: 1) 'an employer/employee relationship; 2) a negligent or tortious act on the part of an employee; and 3) the act complained of must be committed in the course and scope of employment.'" *Jones v. Md. Cas. Co.*, 2018-0552, p. 10 (La. App. 4 Cir. 5/11/22), 339 So. 3d 1243, 1249 (quoting *Alphonse v. Omni Hotels Mgmt. Corp.*, 94-0157, p. 5 (La. App. 4 Cir. 9/29/94), 643 So. 2d 836, 840).

The City argues that Cerdes has failed to plead *respondeat superior* against it because all of Martin's alleged acts occurred outside of the jurisdiction and supervision of the City's police department, as shown by the public records. R. Doc. 31-1 at 7-8. As previously mentioned, the Court will not assess the public records as the City wishes. Notably, if the Court accepted the City's argument and evaluated the public records for the truth of the City's argument, it would be construing documents *against* Plaintiffs. The role of courts at the motion to dismiss stage is to assess whether plaintiffs have stated plausible claims for relief. *Twombly*, 550 U.S. at 556. Courts

24

are called to liberally construe the allegations in complaints in a light most favorable to plaintiffs. *Baker*, 75 F.3d at 196. The City's argument rests on asking the Court to do a function inapposite to what it is called to do at the motion to dismiss stage.

The Complaint contains sufficient allegations of all three elements of *respondeat superior* under Louisiana law. It asserts that Martin was an employee of the City at the time of his alleged wrongdoing, that Martin committed negligent or tortious acts against Cerdes, and that Martin committed these acts in the course and scope of his employment with the City. Case No. 25-142, R. Doc. 4 at 4, 13, 15. Plaintiffs specifically plead that Martin was employed by the City as a police officer and that he was assigned to be a part of Scott's DEA task force as a part of his employment with the City. *Id.* at 15. This plausibly asserts that the City may be liable for Martin's actions under a theory of *respondeat superior*.

Notably, malicious prosecution is an intentional tort. Generally, "employers can be vicariously liable for . . . the intentional acts of its employees" when "those acts . . . are within the course and scope of the tortfeasor's employment, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Carnes v. Wilson*, 48,127 (La. App. 2 Cir. 7/3/13), 118 So. 3d 1275, 1277. Plaintiffs are undoubtedly aware of their burden to demonstrate that Martin was in the course and scope of his employment in order for them to hold an employer liable for Martin's actions. As they represent in their brief, Plaintiffs may "eventually be in a position to agree with the City's . . . [that the] United States should substitute itself as the proper defendant-employer for the Plaintiffs' claims against Martin." R. Doc. 39 at 11. But as Plaintiffs note, "this type of fact-based argument is inappropriate for a Rule 12(b)(6) motion." *Id.* Presently, then, Cerdes's claims against the City survive.

### E.  Qualified Immunity as to Martin its Impact on Supplemental Jurisdiction.

Martin argues that he is entitled to qualified immunity on Cerdes's Fourth Amendment malicious prosecution claim. R. Doc. 40. As discussed below, the Court is dismissing the federal malicious prosecution claim against Martin because there was no clearly established law recognizing the constitutional tort of malicious prosecution at the time of Martin's alleged wrongful acts. Because of this, the Court must assess whether it is appropriate to exercise supplemental jurisdiction over Cerdes's adequately pled state law claims because his analogous federal claim is being dismissed.[16] The Court finds that the state malicious prosecution claims arise out of the same case or controversy as Cerdes's remaining federal claims despite Martin's entitlement to qualified immunity, and that no other equitable considerations caution against the exercise of supplemental jurisdiction.

### a.  Martin Is Entitled to Qualified Immunity

The Supreme Court in 2022 announced its recognition of the § 1983 constitutional tort of malicious prosecution. *Thompson*, 596 U.S. at 39; *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) ("litigants may bring a Fourth Amendment malicious prosecution claim under § 1983"). This ruling overturned a line of cases in the Fifth Circuit which had judicially extinguished claims for this constitutional injury from 2003 to 2021. *Espinal v. City of Hous.*, 96 F.4th 741, 748 (5th Cir. 2024) (discussing the evolution of the constitutional tort of malicious prosecution in the Fifth Circuit). During that time, claims against a defendant whose "bad actions . . . happen[ed] to correspond to the tort of malicious prosecution[, but] result[ed] in an unreasonable search or

---

16    A federal malicious prosecution claim is even more than "analogous" with a state law malicious prosecution claim—in the Fifth Circuit, a claimant proves their federal malicious prosecution claim by using the forum state's state-law elements, with the added threshold element of demonstrating an unlawful Fourth Amendment seizure. *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023). Thus, federal and state law malicious prosecution claims would inherently "form part of the same case or controversy." 28 U.S.C. § 1367(a).

seizure" had to assert those claims under § 1983 as violations of the Fourth Amendment right to be free from unreasonable seizure. *Morgan v. Chapman*, 969 F.3d 238, 245-46 (5th Cir. 2020), *abrogated by Thompson*, 596 U.S. at 42-43 (2022); *see also Espinal*, 96 F.4th at 749 (granting qualified immunity to officers at the motion to dismiss stage because the defendant was arrested and indicted in 2020). During that time, then, there was no constitutional right under the Fourth Amendment to be free from a malicious prosecution that did not result in an unreasonable seizure. *See Morgan*, 969 F.3d at 245-46.

Under the doctrine of qualified immunity, courts look to "whether defendants violated the law that was *clearly established at the time of their actions*. Subsequent legal developments are immaterial." *Id.* at 749 (citation omitted). Therefore, in the Fifth Circuit, the constitutional tort of malicious prosecution was not clearly established from, and will not apply to conduct that occurred between, 2003-2021. Martin, relying on *Espinal*, raises for the first time in his reply brief that he should be entitled to qualified immunity on Plaintiffs' § 1983 malicious prosecution claim because of this. R. Doc. 40 at 5-6.

Plaintiffs concede that, under this precedent, "qualified immunity would apply to the Fourth Amendment malicious prosecution claim." R. Doc. 46 at 1. They also clarify, however, that the Complaint asserts as its "Third Cause of Action" a claim of "Unreasonable Seizure *and* Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments and § 1983." Case No. 25-142, R. Doc. 4 at 14 (emphasis added). While Martin is therefore entitled to qualified immunity on Cerdes's Fourth Amendment malicious prosecution claim, Cerdes may proceed on his Fourth Amendment unreasonable seizure claim.

Plaintiffs' sur-reply raises an additional argument which they make simply to "preserve their right to appeal the issue." R. Doc. 46 at 1. Plaintiffs assert that "qualified immunity should

be denied because new scholarship has shown that the doctrine of qualified immunity is contrary to the original text of § 1983." R. Doc. 46 at 4-7. Plaintiffs point to a law review article highlighted by Judge Willett in a concurring opinion. *Rogers v. Jarrett*, 63 F.4th 971, 979-81 (5th Cir. 2023) (Willett, J., concurring).[17] Judge Willett, in concurrence to a majority opinion he authored, addressed the article and carefully explained that the majority's "decision upholding qualified immunity is compelled by our controlling precedent" and that he "wr[ote] separately only to highlight newly published scholarship." *Id.* at 979. While noting that the piece may contain "game-changing arguments," Judge Willett explained that only the Supreme Court could "definitively grapple with § 1983's enacted text" and overrule the Court's longstanding qualified immunity precedent.[18] *Id.* at 981. Therefore, this Court will decline to address Plaintiffs' arguments on the merits and notes their arguments for appeal purposes.

**b.  The Court Has Supplemental Jurisdiction Over the State Law Claims**

The Court now turns to assess whether it can exercise supplemental jurisdiction over the state law claims despite its dismissal of Cerdes's federal malicious prosecution claim. The City of Hammond is presently in this suit only as a result of Cerdes's state law claims, not any federal claims. Therefore, for the City to remain in this suit, the Court must find that it has supplemental jurisdiction over Cerdes's state law claims. There is no question that the Court has federal question jurisdiction over Cerdes's § 1983 claims for unreasonable seizure under the Fourth Amendment

---

17    In that article, professor and scholar Alexander Reinert argues that the Civil Rights Act of 1871 explicitly abrogated common law immunities through a clause he coins the "Notwithstanding Clause," and that this clause "was never included in the codified version of Section 1983." Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 CAL. L. REV. 201, 235 (2023). The article therefore argues that the qualified immunity doctrine should have never developed. *See generally id.*

18    The Supreme Court had the opportunity to address Judge Willett's thoughts directly. Rogers petitioned for certiorari on "the question [of] whether the qualified-immunity doctrine is irreconcilable with the text of Section 1983 as Congress originally enacted it in 1871." Brief for Petitioner at (i), *Rogers v. Jarrett*, 144 S. Ct. 193 (2023) (No. 23-93), 2023 WL 4933666, at *0 (referencing Judge Willett's concurrence). The Supreme Court denied certiorari. *Rogers v. Jarrett*, 144 S. Ct. 193 (2023). This Court therefore notes Plaintiff's arguments and their desire to "preserve it for appeal." R. Doc. 46 at 4.

and for procedural and substantive due process violations under the Fourteenth Amendment. *See* 28 U.S.C. § 1331. Supplemental jurisdiction will extend to state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

Dismissal of the federal malicious prosecution claim is not dispositive as to the survival of the state law claims. If the state law malicious prosecution claim relies on the same operative facts as any—or all—of Cerdes's § 1983 constitutional claims, then "the two claims . . . make up but one constitutional case.'" *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)) (internal quotation omitted). This "derivative jurisdiction, though, is to some extent discretionary; § 1367 spells out circumstances, again derived from [*United Mine Workers v.*] *Gibbs*, in which a federal court may decline to hear a state claim falling within the statute's bounds." *Id.* Thus, the Court will look to both (1) whether the constitutional and state law claims arise from the same set of operative facts, and (2) whether the Court should decline to exercise supplemental jurisdiction for any of the reasons enumerated in 28 U.S.C. § 1367(c).

First, the federal and state law claims arise from the same set of operative facts. All of Cerdes's federal claims, as well as the state claims, revolve around the same alleged actions of Martin and Scott. Facially, the claims themselves are similar and sound in tort, so there is no theoretical separation of claims such as a federal claim sounding in tort and a state claim sounding in breach of contract. Moreover, this is not a case where the Complaint alleges that certain acts at certain times apply to the federal claims and other acts apply to the state claims. The Complaint does not plead scattered, isolated, unrelated events that are unrelated but-for occurring temporally. Rather, it pleads that all of Martin's actions cumulatively amount to violations of Cerdes's

constitutional rights, as well as a state-law right to recover damages if he can prove he suffered a malicious prosecution at Martin's hands. And because Martin's employer can be held vicariously liable for intentional torts committed in the course and scope of his employment, and Cerdes has adequately pled a *respondeat superior* theory of liability for the City, it is proper for this Court to exercise supplemental jurisdiction over both of Cerdes's state law claims.

In addition, the noted interconnectedness of these Fourth Amendment theories shines a light on how the same operative facts can underpin both malicious prosecution and unreasonable seizure claims. As the Fifth Circuit explains in *Espinal*, for over two decades, the Circuit rule was that claimants could not bring a § 1983 claim based on a constitutional malicious-prosecution theory. 96 F.4th at 748. Instead, claims based on a defendant's bad actions that corresponded to the tort of malicious prosecution could only be brought under the Fourth Amendment—notably, only when a plaintiff suffered an unreasonable seizure as a result of those bad actions. *Id.* Here, Cerdes alleges that Martin's unlawful act of, *inter alia*, planting evidence caused him to be unreasonably seized in violation of the Fourth Amendment. Therefore, Cerdes's facts, as pled in the Complaint, do describe alleged "bad actions []that happen to correspond to the tort of malicious prosecution" which resulted in an unreasonable seizure, as described in *Espinal*. *Id.* at 748 (quoting *Morgan*, 969 F.3d at 245-46) (cleaned up). Martin's actions that form the basis of Cerdes's Fourth Amendment unreasonable seizure claim therefore clearly forms the basis of Cerdes's state law malicious prosecution claim against Martin. [19]

Second, the § 1367(c) factors do not call for this Court to decline its ability to exercise supplemental jurisdiction. Cerdes's malicious prosecution claim does not raise a novel or complex

---

[19]     The Court utilizes Cerdes's Fourth Amendment unreasonable seizure claim as a single example. But, looking at the Complaint holistically, the Court finds that the same nucleus of operative facts connects all of Cerdes's constitutional injury theories to his state law malicious prosecution claims.

issue of state law—at least not at the motion to dismiss stage. The state law claim does not substantially predominate over the claims in which this Court has original jurisdiction, either, because the factual bases for all of the claims are the same. While the Court is dismissing Cerdes's Fourth Amendment malicious prosecution claim because Martin is entitled to qualified immunity, Cerdes's remaining federal claims survive, so this Court is retaining three claims over which it has original jurisdiction. Finally, the Court cannot find any exceptional circumstances or otherwise compelling reasons for declining jurisdiction over the state law malicious prosecution claim. Instead, "[r]equiring Plaintiff to litigate his claim in state court would 'necessarily require consideration by two distinct courts of the same operative fact[s]' and the 'same legal issues.'" *Lumpkin v. Kaufman Cnty. Sheriff's Off.*, No. 21-1842, 2023 WL 3046354, at *11 (quoting *McKee v. Texas Star Salon, LLC*, No. 06-879, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007)). Thus, it is proper for this Court to exercise supplemental jurisdiction over Cerdes's state law claims against both Martin and the City.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the City's Motion to Dismiss, R. Doc. 31, is **DENIED.**

**IT IS FURTHER ORDERED** that Martin's Motion to Dismiss, R. Doc. 30, is **GRANTED IN PART** and **DENIED IN PART**. The motion is denied as to all arguments except to enter qualified immunity as to Cerdes's Fourth Amendment malicious prosecution claim.

New Orleans, Louisiana, this 25th day of August, 2025.

THE HONORABLE ELDON E. FALLON